[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter first came to the court by virtue of summons and CT Page 979 complaint dated November 26, 1997 and returnable January 20, 1998, in which complaint the plaintiff petitioner sought a dissolution of the marriage, custody of and support for the minor children, lump sum and periodic alimony, counsel fees and assignment of all or part of the estate of the defendant and such other relief as in law or equity may appertain.
The usual automatic orders accompanied the complaint.
On January 22, 1998 the defendant appeared by counsel.
On February 10, 1998 the plaintiff filed a motion for alimony, support and custody and an allowance to prosecute.
The original summons and complaint in this motion were returnable to the Superior Court for the Judicial District of New Haven. In fact, the parties were residents of the Judicial District of New London and defense counsel filed a motion to dismiss dated February 19, 1998 by virtue of the incorrect venue and a memorandum of law in support of the motion to dismiss.
The motion for dismissal was granted by the Court, Munro, J., on April 21, 1998 and thereafter plaintiffs counsel moved to open the judgment of dismissal which was granted by the court on June 22, 1998.
On June 3, 1998 plaintiffs counsel filed a motion to transfer the subject file to the Judicial District of New London, which motion to transfer was granted on June 22, 1998.
Certain motions were filed by plaintiffs counsel on June 3, 1998, but the same did not appear to have been acted on.
The defendant filed a financial affidavit on August 3, 1998 reflecting his then current financial status.
On June 9, 1999 defense counsel moved to refer the matter to Family Relations, which motion was granted by the Court, Mihalakos, J., on July 12, 1999.
Incident to that motion, the court granted a motion for the appointment of counsel for the minor children in the matter, which was granted by the court. Attorney Paige Stevens was appointed as counsel for the minor children incident to said motion. CT Page 980
On July 30, 1999 the attorney appointed for the minor children moved for an allowance for counsel fees, and a stipulation as concerns the payment thereof was filed on August 23, 1999, wherein the defendant agreed to assume and be responsible for the fees, costs and charges of the attorney appointed for the minor children.
On November 19, 1999 the attorney for the minor children filed a motion to accept the Family Relations report, and the stipulation of the parties incident thereto, dated November 29, 1999, was accepted by the court and incorporated as an order of the Court, Kenefick, J.
The complete five-page report prepared and submitted by Family Relations and authored by Sharon F. Kesten, Family Relations counselor, was accepted and ordered to be placed in the file.
See also the stipulation of November 29, 1999 executed by the attorney for the minor children and counsel. The plaintiff and the defendant with their respective attorneys and witnesses appeared before the court on January 5, 2000 and the matter was heard to a conclusion.
The Court makes the following findings of fact.
The plaintiff, whose maiden name was Ann S. Quinn, and the defendant were joined in marriage at Colchester on May 5, 1985.
Both parties have resided continuously in this state for one year next preceding the date of this petition.
There are two minor children issue of this marriage; Matthew Allen Korduner born September 5, 1989, now age 10, and Rebecca Lynn Korduner born November 21, 1986, now 13.
No other children have been born to the plaintiff wife from the date of the marriage to the present time.
Neither party has been the recipient of State welfare; however, the testimony reflects that approximately one year ago, some support was secured from the Town of Colchester for a brief period assisting the plaintiff. No aid or assistance is presently being received from any governmental or civic organization.
CT Page 981 The marriage has irretrievably broken down with no reasonable prospect for reconciliation.
The two minor children have been residing with the plaintiff for the last two years from and after the date of separation of the parties.
The plaintiff and the defendant according to the testimony apparently both participated in the Family Relations study which was done and which was placed in the file and agreed to the acceptance of the recommendations contained therein.
The child Rebecca has been undergoing counseling; the fees for which have been equally shared by the plaintiff and the defendant. The defendant has apparently regularly exercised his rights of visitation with regard to the children and the visitation schedule according to the testimony has apparently worked out well.
The plaintiff testified that she has been receiving $215.00 weekly for support.
During a portion of the marriage before the parties separated, the plaintiff worked for the business that was being conducted by the defendant. The business was known as KBW Corporation and was engaged in activities pertaining to heating and air conditioning.
The plaintiff did the bookkeeping work and was the office manager. This for a period of over ten years which went back to a period of time prior to the parties being united in marriage.
The business, as a result of various problems, ended in May of 1997. The plaintiff had worked for the business for two years prior to the parties being married.
The business ended due to problems pertaining to back taxes and unsigned contracts.
The plaintiff was unemployed for a six-month period after the business of her spouse was terminated.
The plaintiff testified that the compensation which she received while she was working for the business was used to help in the payment of household expenses and matters of like nature. Subsequently, the plaintiff secured a position working for CT Page 982 Manpower and thereafter for Computer Sciences in Norwich. The plaintiff now has a full-time position with Computer Sciences.
During the course of the marriage the parties resided in the Town of Colchester.
The plaintiff left that residence in March of 1999. The former home of the parties is in foreclosure. Some of the assets of the former business were taken by the Internal Revenue Service (IRS) and secured parties apparently took some of the assets.
The defendant, through his parent mother, purchased the van which was used in the business and the tools and items of like nature that were contained therein. The defendant was described as being a hands-on contractor. The defendant, apparently at least in the past, has done some jobs on the side; that is, in addition to whatever his regular course of employment was.
The defendant is now employed by the State of Connecticut in a licensing investigation capacity and no longer engages in any outside work except perhaps to help a friend on an emergency basis.
After the failure of the KBW Corporation, the defendant worked for a time for the Nutmeg Company doing the same type of work in heating and air conditioning.
It was represented in the testimony that the parties did not have any equity of consequence in the former marital home known as 38 Edgewood Drive in Colchester.
There is a timeshare unit as concerns property in Barbados, which is owned by the parties which will be treated later in the memorandum.
The plaintiff also testified as to a debt to her mother Mary Suraci, which she incurred incident to providing funds for counsel.
This marriage was the second for the plaintiff and a child of the plaintiff by a prior union named John Korduner was adopted by the defendant. This young man is in the military service of the United States.
The plaintiff testified that there were no arrearages due to CT Page 983 her with regard to any prior orders of the court as concerns either alimony or support.
The plaintiff is apparently presently eligible for medical and/or dental coverage incident to her present employment with Computer Sciences.
The plaintiff testified that at one point in time the timeshare unit in Barbados was appraised at $6,000.00 and at another point in time individuals who held a sequential interest in a similar timeshare unit in Barbados had made an offer to them in the amount of $5,000.00. That transfer was never accomplished.
The plaintiff is age 43, described her health as being good.
The plaintiff's education extended through graduating from high school.
This is a marriage of almost 15 years and the plaintiff testified that it has irretrievably broken down.
The two children Matthew, age 10, and Rebecca, age 13, have both been described as being in good health. Matthew attends the Stanton School and is in the fourth grade and doing well. Rebecca is in the eighth grade at Teachers' Memorial School and doing well.
The plaintiff in her present position has the title of Help Desk Analyst and Account Representative.
The plaintiff presently rents a suitable residence in Norwich at 173 Maple Street and the same appears to be comfortably furnished.
From the testimony of the defendant, the Court finds that he has been employed by the State of Connecticut since September 17, 1999 and his work is that of being an occupational license inspector for the Department of Consumer Protection.
The defendant's work includes visiting various and sundry businesses and licensed individuals to make sure that the licenses are current, that they are proper, and that the parties who hold them are qualified.
The defendant himself being formerly licensed in heating and CT Page 984 cooling by the State appears to be well versed in this area. In the past, the defendant has done some modest amount of so-called side work wherein he might receive as much as $30.00 weekly, but the same has been terminated and ended so as to preclude the possibility of any conflict of interest mindful of the nature of his job.
When the defendant's former business, which involved other principles, was closed and terminated, the debt to the IRS was in the nature of $42,000.00. Various and sundry pieces of equipment were sold off to reduce the IRS debt in May of 1996.
As concerns the van that was used by the corporation and the equipment and tools contained therein, the defendant's mother purchased that from the IRS for and in consideration of the sum of $3,500.00. That vehicle has apparently been involved in an accident and is not presently in such a state that it can be legally operated on the highways.
The defendant's age is 49. He describes his health as being good.
The parties have been separated for 2-1/2 years.
The defendant testified as to the dissolution of his former corporation and verified the irretrievable breakdown of the marriage between the parties.
The defendant's position is to the effect that the plaintiff changed her views and values with regard to matters pertaining to the family and the business over the years and that this was a contributing factor to the dissolution.
The defendant indicated that he had been asked to leave the home and residence by the plaintiff at the time of the separation. At that juncture, the defendant had taken a position with a firm known as Nutmeg but that was left and terminated when he joined the position he presently has with the State.
The defendant presently resides in a trailer in a mobile home park which he rents.
The defendant's education extended through completing high school. He also attended a technical trade school.
CT Page 985 The defendant served in the United States Coast Guard for a period of four years, 1968 through 1972. His rating was that of an E-5, an electronic technician and he was honorably discharged.
The defendant anticipates that his annual income with his position with the State will be in the neighborhood of $41,000.00.
The defendant's military service enabled him in part to secure further educational goals under the GI Bill.
From the financial affidavits of the parties the Court finds as to the plaintiff her gross weekly wage from employment now is $635.06, itemized proper deductions of $170.61, for a net of $464.45. In addition, the plaintiff shows the child support under early order or agreement in the amount of $215.00 for a total net income of $679.45.
The plaintiff shows weekly expenses that amount to $808.54. Debts including $7,000.00 to the IRS for back taxes, the loan to her parent mother for $1,150.00, and an obligation to plaintiffs counsel of $8,527.50, plus credit card debt, for a total of $17,077.00.
The property at 38 Edgewood Drive in Colchester was valued at $120,000.00, with a mortgage debt of $150,000.00. As earlier indicated, this property is under foreclosure and the plaintiff has vacated the same.
The plaintiff has a 1996 Toyota Corolla valued at $9,000.00, with a loan balance in the same amount for a zero equity and a 1978 Jeep Cherokee valued at $5,000.00 with an equity of $2,500.00. This vehicle is to be given over to the defendant.
The boat and trailer and the plow truck shown on her affidavit actually appear to be assets of the defendant and the plaintiff is agreeable to his having the same.
The plaintiff shows $200.00 in a checking account, values the timeshare at $6,000.00 and indicates a Kawasaki-motorcycle, but the testimony in that regard reflects that the motorcycle was sold some time ago.
As to the defendant, his present position with the State, his gross weekly is $777.40, appropriate deductions with taxes, etc., CT Page 986 $233.36, for a net of $544.04. His weekly expenses as shown total $608.00. The only debt which the defendant shows is the $7,000.00 due to the IRS.
The defendant makes no mention of the real estate.
The defendant values the 1978 Jeep Cherokee at $3,000.00, with the same apparently being free and clear.
There is an aluminum boat and motor valued by the defendant at $800.00, a pop-up camper valued at $400.00, and a plow truck valued at $1,000.00, and tools of the trade at $500.00.
The defendant has $200.00 in a checking account with Liberty Bank. He has $250.00 in his State retirement plan incident to his very recent employment in that position.
The defendant's 1998 1040 income tax return, Defendant's Exhibit A, reflects that for that calendar year the defendant's wages and income were to the amount of $43,995.41.
The defendant's adjusted gross income on that return was $42,768.99.
 Discussion
As indicated, this is a marriage of almost 15 years.
The testimony has indicated that there have not been any instances of physical violence. There has been no evidence of the abuse of alcohol or substances.
There is no testimony that there have been violent or continuous arguments or verbal abuse. Both the plaintiff and the defendant appear to be in good health. Both are well spoken and both moderately well educated.
Both of the parties request that the Court accept the Family Relations report as concerns matters pertaining to the children.
The report in part indicates that the plaintiff and the defendant are fortunate that they have two children who are bright, articulate and sensitive. Both of the parties appear to be genuinely and sincerely concerned as regards the best interests of the children and the securing of a proper education CT Page 987 for both of them.
 The Law
The Court has considered all of the statutes which apply in matters of this nature including C.G.S. § 46b-82 regarding alimony and § 46b-84 as concerns support.
The Court has considered all of the applicable case law that governs the matter.
The Court has considered the testimony of all witnesses, their candor or lack thereof, and all exhibits and the arguments of counsel.
The Court has considered the length of the marriage, the problems with which it was beset, the age, health, station, occupation, employability, estate and the needs of the parties based on what is available to the Court.
The Court has considered the standard of living of the parties as best it can and the present financial situation that exists.
The Court enters the following orders.
The plaintiff and the defendant shall have joint legal custody of the two minor children; to wit, Matthew Alan Korduner, age 10, and Rebecca Lynn Korduner, age 13, with the plaintiff mother being the primary custodial parent.
Subject to the right of reasonable visitation in the defendant father, consisting of every other weekend from 5:00 p. m. Friday to 7:00 p. m. Sunday; this as to both of the children. In addition, the defendant shall have visitation with the son Matthew each Tuesday evening from 6:00 p. m. to 9:00 p. m. and with the daughter Rebecca each Thursday evening from 6:00 p. m. to 9:00 p. m.
The plaintiff and the defendant shall have the children on alternating holidays consisting of New Year's Day, Memorial Day, July 4th Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, Rosh Hashana, Christmas Day and Yom Kippur.
The plaintiff mother shall have the children on Mother's Day and the children's birthdays in the even-numbered years. CT Page 988
The defendant shall have the children on Father's Day and the children's birthdays in the odd-numbered years.
In addition, joint decision making by the parties shall include, but shall not be limited to, regular mutual consultation and decisions with respect to school choices and placement, extracurricular activities, camps, religious training, and medical, dental, orthodontics, psychological and prescriptive care.
The plaintiff wife shall give the defendant husband reasonable notice of all important matters that affect the welfare of the children; matters of education, religion and so forth.
The plaintiff wife shall provide the defendant husband on a periodic basis with matters pertaining to the children's school and/or teachers, copies of their report cards and matters of like nature.
Each of the parties shall be responsible for arranging and paying, if required, for any daycare or after-school care that may be necessary during their respective periods of custody and/or visitation.
The orders pertaining to custody and visitation are made mindful of the Family Relations report of November 29, 1999 and the acceptance thereof by the respective parties, counsel and counsel for the minor children.
There has been a request of the Court that orders be entered incident to costs and expenses pertaining to religious education and synagogue dues. The Court however feels that it is not appropriate for the Court to enter orders of a religious nature and proceeds on the premise that each of the parents will do the best that they can for the minor children in that area; to wit, religious education predicated upon an abiding love and affection by each parent for the children.
The Court enters an order of child support in accordance with the guideline worksheets in the total amount of $177.00 per week.
The defendant shall continue to provide at his sole cost and expense medical and hospitalization insurance coverage for the minor children as available through his place of employment. CT Page 989
The plaintiff, incident to her testimony, has indicated that she now has her own medical and hospital insurance through her place of employment and the Court enters no order in that respect as to the plaintiff.
Any medical, dental or like medical expenses that are not covered under the defendant husband's medical policy shall be equally shared 50-50 by both parties.
The defendant shall pay to the plaintiff as periodic alimony the sum of $60.00 per week until March 5, 2008. The award of alimony is non-modifiable as to term but not as to amount. Said alimony will terminate earlier upon the plaintiffs death, remarriage or cohabitation as provided under the statute.
As concerns the minor child Rebecca, who according to testimony continues to undergo counseling, any costs and expenses incident thereto shall continue to be equally shared by the plaintiff and the defendant.
In accordance with the stipulation of the parties under date of August 23, 1999, any amount due and owing to the attorney appointed as counsel for the minor children to be paid by the defendant.
It has been represented to the Court that items of personalty, home furnishings and so forth have been amicably divided between the parties to their satisfaction.
The defendant, in the event that he has not already secured the same, shall be entitled to his computer and the tools of his trade.
In addition, the defendant shall be entitled to the aluminum boat and motor, the Starcraft pop-up camper, the Jeep automobile and the plow truck.
Each party may retain the very modest amounts which they reflect as being in their checking account with the Liberty Bank.
Neither party has any asset of any consequence in any retirement plan or 401K plan.
The timeshare unit in Barbados shall be sold by the parties on CT Page 990 the best terms and conditions that may be available and any proceeds therefrom shall be used in whole or in part for the discharge and payment of the monies due to the Internal Revenue Service.
In the event that the amount secured from the sale of the timeshare unit is in excess of what is due at that time to the Internal Revenue Service for back taxes accrued during the life of the marriage, the same shall be apportioned equally between the plaintiff and the defendant.
The plaintiff may retain The 1996 Toyota Corolla in her possession.
The Court enters no order as concerns the former marital home known as 38 Edgewood Drive in Colchester; the same presently not being occupied by either party and under foreclosure with a minus equity.
Each party to be responsible for their own individual attorney's fees.
The plaintiff and the defendant shall share the personal exemptions as concerns the children. Each party being entitled to take one child for State and federal tax purposes.
There has been no request made of the Court for resumption of the plaintiffs maiden or prior name and the Court enters no order incident thereto.
The Court grants the relief prayed for. The marriage is dissolved on the grounds of irretrievable breakdown and the parties are declared to be single and unmarried pursuant to the provisions of the statute.
Austin, J.